RICHARD T. HARRIS vs. SKYLINE CORPORATION & others.

Suffolk.    February 7, 1961. — April 10, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Escrow.    Interpleader.    Attorney at Law.    Equity Pleading and Practice,*
   *Rehearing.*

At the trial of a suit in equity by way of interpleader brought by an attor-
   ney who had represented the interests of the buyer at the passing of
   papers in a sale of real estate, when it appeared that necessary grading
   and landscaping had not been completed by the seller, evidence required
   a conclusion that the condition of an escrow agreement then made be-
   tween the plaintiff and the seller's attorney under which a part of the
   purchase price was deposited with the plaintiff was that the deposit
   should not be paid to the seller until the seller's attorney produced a
   compliance certificate issued by the Veterans Administration, rather
   than that the deposit should not be paid to the seller until such work
   should be completed; and the plaintiff, upon subsequently being in-
   formed by the seller's attorney that he had what he asserted to be a
   compliance certificate and by the buyer's then counsel, an associate of
   the plaintiff, that the work had not been done and the deposit should not
   be paid to the seller, had a duty, by reason of his undertaking to the
   seller's attorney, to determine the validity of the proffered certificate
   and to report his determination to the seller and the buyer, and was not
   entitled to take the position of a mere stakeholder.    [448–449]
Where evidence at the trial of a suit in equity by way of interpleader
   established that the plaintiff held money of a defendant buyer of real
   estate in escrow for payment to the defendant seller upon condition that
   the seller's attorney produce a compliance certificate issued by the Vet-
   erans Administration, but the trial proceeded to a final decree without a
   determination whether that condition had been met and on the erroneous
   premise that the plaintiff's only obligation was that of a mere stake-
   holder, to pay the money into court, the decree was vacated and further
   proceedings ordered stayed for a reasonable time so that the plaintiff
   might determine whether a valid compliance certificate had been issued
   and report his findings to the court and to the seller and the buyer.
   [449–450]

BILL IN EQUITY, filed in the Superior Court on February
14, 1957.

The suit was heard by *Barron, J.*

*John A. McCarty,* for the defendant Skyline Corporation.

No argument nor brief for the plaintiff or the defendants Lundquist.

WHITTEMORE, J.   The hearing of this bill of complaint by way of interpleader proceeded on the premise that when the bill was filed the plaintiff had no obligation in respect of the escrow under which he held the sum of $350 except to make that sum available in court to abide a determination between the defendant Skyline Corporation (Skyline) on the one hand, and the defendants John A. and Mary F. Lundquist, on the other, as to whether the condition of the escrow had been met by Skyline.   That premise is untenable on the evidence, all of which is reported, and further proceedings are required.

The evidence establishes the facts stated in this and following paragraphs.   The escrow was created on February 27, 1956, in the course of the delivery of a deed and a mortgage, and the payment of the purchase price, on the sale of real estate in Burlington.   Those attending, in addition to the plaintiff, were the treasurer of Skyline (the seller), D. Francis Mahoney; the attorney for Skyline, Mr. John A. McCarty; and the buyers, Mr. and Mrs. Lundquist.   The plaintiff, an attorney at law, was present as the representative of the law firm by which he was employed to act for the mortgagee, Lever Cambridge Employees Credit Union (Lever).   It developed that necessary grading and landscaping of the lot had not been completed and a check for $350 from Lever to the Lundquists, indorsed to Skyline, being a part of the purchase price, was deposited with the plaintiff.   Mr. McCarty required that the determination of whether the work was satisfactorily completed not be left to the Lundquists.   The plaintiff then undertook to Mr. McCarty that when the latter produced a compliance certificate issued by the Veterans Administration he would deliver the check to Mr. McCarty.[1]   It was express that the proof that the work was done would be the issuance of the

---

[1] "And did you agree that when I produced that V. A. Certificate of Compliance, that you would turn over the check for $350 to me?"   A.   (by the plaintiff)   "That is my recollection."

certificate. The talk was mostly between the attorneys; ''we discussed between us, . . . asking questions of our respective parties.'' The attorneys figured the adjustments. The plaintiff recorded the deed. The inference is required that the plaintiff, although not formally acting as attorney for the Lundquists, looked after their interests and believed that he had seen to it that they understood that they had relinquished their interest in the check unless the escrow condition should not be performed within a reasonable time.

On July 6, 1956, Mr. McCarty wrote the plaintiff that he had the compliance certificate. By this time a partner in the law firm with which the plaintiff remained associated and where he worked (no longer on salary, but, we infer, with an ''arrangement'') had become counsel for the Lundquists. The plaintiff was informed that the Lundquists contended that the work had not been done and the money was not payable. The plaintiff did not doubt that Mr. McCarty in good faith had obtained what he understood to be a compliance certificate, and, until a stage in the trial, never suggested to Mr. McCarty that there was any question about that. He did notify Mr. McCarty that he would not pay over the money because there was a serious dispute.

The plaintiff filed his bill of complaint on February 14, 1957, alleging that he was merely a stakeholder in respect of a dispute between the Lundquists and Skyline; that as ''security'' for Skyline's promise to the Lundquists, he was holding the $350 until the work should be done and the certificate issued; that (par. 5) Mr. McCarty had ''made demand . . . for the payment of said $350, *since he was then in possession of the Veterans Administration Compliance Inspection Report covering the said premises*'' (emphasis supplied); that the Lundquists had informed him that the work had not been completed and ''he had no right to turn over . . . the $350 until'' it had been; and that they demanded the money. The bill asked that the plaintiff be authorized to pay the $350 into court and that the defendants be ordered to interplead and litigate the issues between themselves.

In the course of the hearing the plaintiff testified that if a certificate of compliance should be presented to him the condition of the escrow would be fulfilled, and he would turn over the check but for the fact that he had checked the Veterans Administration regulations and looked at the lot and this gave him serious doubt ''whether there was a Certificate or if there was any fraud in the issuance of a Compliance Certificate,'' and he decided, therefore, to hold the check until the court should decide that the Lundquists had had their day in court.

The plaintiff also testified that, although he had gone to the Veterans Administration, all that he found out was ''what the requirements of the V. A. were for grading on lots of land.'' He had ''no recollection of being told that . . . [the certificate] had been issued'' and did not see a copy of it. We infer that he then had no doubt that the certificate had been issued and never made a check. His principal doubt as to whether a certificate had been issued arose in the course of the trial. ''Q. Was there any question . . .? A. There is now.'' ''Q. You never questioned the fact that a certificate had been issued up to now, did you? A. No.'' Later, on examination by the attorney for the Lundquists: ''Why did you have these doubts?'' A. ''You informed me, after checking with the V. A. and summonsing the records here today, that their files don't show one, that one has not been issued.'' However, he raised no question that Mr. McCarty had information to the contrary and ''If I hadn't seen the job, I wouldn't have doubted any more.''

Mr. McCarty sought unsuccessfully to have received in evidence what he asserted to be the compliance certificate. The attorney for the Lundquists objected to the absence of due authentication, and we assume the rulings, in the face of objection, were correct.

The paper was shown to the plaintiff and he was asked if that was the compliance inspection report. He answered that he had no way of knowing and that the paper speaks for itself. It developed on the next day that the records

which had been in court the day before had not, by error, related to the Lundquists' lot at all, and that the Veterans Administration has regulations in respect of keeping records of compliance inspection, but on objection of the plaintiff as well as the attorney for the Lundquists the unauthenticated copy of the regulations which was in court was not read into the record.

There was testimony justifying the conclusion that the Lundquists were reasonably dissatisfied with what had been done by way of landscaping and grading.

The report of material facts contained findings that the escrow was security for the promise of Skyline to complete the work; the terms of the escrow were that the plaintiff hold the check until the work should be completed and the certificate obtained; the work was never completed; what was done was improper; the evidence did not establish that the certificate was ever issued.

The final decree discharged the plaintiff from liability, and awarded to him $27.90 costs, and to the Lundquists the balance of $322.10.

The findings in respect of the escrow were not justified on the evidence. The plaintiff's testimony was clear that the certificate was to be conclusive; he was corroborated by Mahoney; Mrs. Lundquist testified and was not examined in respect of the escrow terms.

The important circumstance is that the plaintiff's undertaking was an attorney's undertaking to another member of the bar, in reliance upon which the attorney for the seller delivered the deed. The plaintiff, having made an engagement to Mr. McCarty, could not retreat into the position of a mere stakeholder upon notice from the Lundquists that they did not wish the check delivered.

The plaintiff's undertaking to Mr. McCarty imposed upon the plaintiff the duty to examine the tendered certificate, and if he then had doubts of its validity to express them, and give Mr. McCarty an opportunity to dispel them. If he remained uncertain of the validity of the certificate or its controlling force notwithstanding the escrow agreement

he should have disclosed the grounds to both parties. The relationship between the plaintiff and the attorney for the Lundquists emphasized the obligation. The bill, in the circumstances, may not be construed to put in issue the validity of the certificate as between the plaintiff and Skyline. Mr. McCarty had reasonable ground, in the form and substance of the escrow undertaking, to construe the somewhat ambiguous allegation of paragraph 5 of the bill (*supra*) to be an averment by the plaintiff that Skyline had the certificate. Skyline's answer admitted the allegation; the Lundquists' answer, by the firm with which the plaintiff is associated, averred no knowledge and called upon the plaintiff (not Skyline) for proof.

The disposition of the case must take into account the obligations of the attorneys. Skyline cannot be foreclosed because of its failure at the hearing to prove a validly issued certificate. The Lundquists, on the other hand, may require the plaintiff to be satisfied of the validity and controlling force of the compliance certificate before delivering the check. Skyline cannot be foreclosed of its opportunity to do the work, if more is required (and we intend no suggestion), in the absence of a finding that a reasonable time to do the work had expired. The plaintiff after full disclosure is entitled to the protection of a court decree. The nature of the escrow as an attorney's undertaking having been established at the hearing, as well as the need for further action by the plaintiff, the case could not properly proceed beyond that point pending such action.

The final decree is vacated. Further proceedings are to be stayed for a reasonable time pending such inquiry and investigation by the plaintiff as shall be reasonably necessary to satisfy him whether a valid compliance certificate has issued, and his report thereon to the court and the parties. Amendments of the pleadings are to be allowed as the parties may be advised and the court shall deem appropriate in the light of the report. Such additional relevant evidence shall thereafter be received as any party shall offer. Unless controlled by further evidence, such final

decree as may enter in due course shall reflect the construction of the escrow undertaking herein made.

If in the light of the report there remains any issue between the plaintiff and either defendant, or between the defendants, in respect of which the plaintiff's testimony or action will be relevant, we shall expect that the appearances for the respective parties will be such that there will be no possible question of conflicting interest.

The defendant Skyline is to have the costs of this appeal against the plaintiff.

*So ordered.*